IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CESAR RAFAEL ZUNIGA, § | | |
|     Plaintiff, § | | |
| § | | |
| v. § | 5:18-CV-338-JKP | |
| § | | |
| BEXAR COUNTY DEPUTY SHERIFF § | | |
| E. CALDERON, BADGE # 1226, § | | |
| BEXAR COUNTY DEPUTY SHERIFF § | | |
| B. RAMOS III, BADGE # 2768, and § | | |
| BEXAR COUNTY DEPUTY SHERIFF § | | |
| N. GARZA, BADGE # 4304, § | | |
|     Defendants. § | | |

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN THE ALTERNATIVE, MOTION FOR JUDGMENT ON THE PLEADINGS, AND DISMISSING PLAINTIFF'S CIVIL RIGHTS COMPLAINT

Before the Court is "Defendants' Motion for Summary Judgment and in the alternative, Motion for Judgment on the Pleadings." Defs.' Mot. Summ. J., ECF No. 32.[1] Therein, defendants assert there are no genuine issues as to any material fact and they are entitled to judgment as a matter of law under Federal Rule of Civil Procedure 56. In the alternative, defendants maintain the material facts are not in dispute and the Court may render a judgment on the merits pursuant to Federal Rule of Civil Procedure 12(c) by looking to the substance of the pleadings and any judicially noticed facts. Plaintiff has not filed a substantive response to defendants' motion and his time to do so has expired. Pl.'s Advisory, ECF No. 41. After reviewing the pleadings, the summary judgment record, and the applicable law, the Court grants the defendants' motion and dismisses this case.

---

[1] "ECF No." refers to the Electronic Case Filing (ECF) number for documents docketed in 5:18-CV-338-JKP. Where a discrepancy exists between page numbers on filed documents and page numbers assigned by the ECF system, the Court will use the latter page numbers.

## I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Cesar Rafael Zuniga, a state prisoner proceeding pro se and in forma pauperis, brings a complaint under 42 U.S.C. § 1983 alleging violations of his civil rights by Bexar County Sheriff's Office deputies. Pl.'s Compl., ECF No. 1. His complaint stems from his arrest in San Antonio, Texas, on June 6, 2016, for "Evading Motor Vehicle and Child Endangerment." Defs.' Mot. Summ. J., p. 2, ECF No. 32. His arrest came after "he fled from police and Bexar County deputies at a high speed with a young child unsecured in the back seat." *Id.* He claims that after his arrest, a crime scene investigator assaulted him while two other deputies stood by:

> I . . . was arrested, and detained in handcuffs, and placed inside a patrol vehicle. That is when I was approached by crime scene investigator officer E. Calderon #1226. He then took me out [of] the patrol vehicle, closed the door behind me, and had me stand against the patrol vehicle. He then asked me to lift my head up to take a picture of me. I didn't comprehend well, and that is when he started to choke and strangulate [sic] me. Officer B. Ramos III #2768, and officer N. Garza #4304 just stood there watching him assault me.

Pl.'s Compl., p. 4, ECF No. 1. He asks the court to order his acquittal on all charges in his criminal case and "compensation for mental trauma/agony." *Id*.

Defendants Deputy Nathaniel Garza, Deputy Ben Ramos III, and Sergeant Edward Calderon denied Zuniga's claims and asserted qualified immunity defenses in their answers. Answer of Ramos and Garza, p. 2, ECF No. 13; Answer of Calderon, p. 2, ECF No. 23. Defendants then filed a motion for summary judgment or, in the alternative, motion for judgment on the pleadings. Defs.' Mot. Summ. J., ECF No. 32. In their motion, defendants described the events of June 6, 2016 in greater detail.

Garza explained he gave chase when he observed Zuniga driving his vehicle with a

toddler standing unsecured in the rear seat. *Id*., Ex. C (Decl. of Nathaniel Garza, May 14, 2019), p. 1, ECF No. 32-4. He followed Zuniga in his clearly-marked-patrol car through San Antonio neighborhoods at speeds up to 85 miles per hour. *Id*. He observed Zuniga jump in the back seat—with a passenger remaining in the front seat—and grab the child while the vehicle moved forward at 40 miles per hour. *Id*. at 2. He described how Ramos stopped Zuniga's vehicle by blocking it with his patrol car. *Id*. He explained he ordered Zuniga out of his vehicle at gun point, and when he refused, he hit the rear window with his baton to gain entry. *Id*. He noted he "then detained Mr. Zuniga without incident." *Id*. Garza maintained Calderon did not use excessive force at the scene of the incident:

> Investigator E. Calderon #1236 arrived on the scene to conduct his investigation. I did not observe Investigator Calderon choke or strangle Mr. Zuniga. I did not observe E. Calderon touch Mr. Zuniga at all. I did not see excessive force being used by any Bexar County Officer toward Mr. Zuniga. Given my knowledge and training, I am able to recognize when the force used to obtain a detainee's compliance is excessive. No officer used excessive force toward Mr. Zuniga in this case. I did not intervene during Investigator Calderon's interaction with Mr. Zuniga because I did not observe any use of excessive force by Investigator Calderon toward Mr. Zuniga. I did not render aid to Mr. Zuniga because I did not observe any excessive force being used against him.

*Id*. at 2–3.

Ramos described Zuniga as "uncooperative and had to be taken to the ground and secured in handcuffs. We then assisted him to his feet and escorted him to the back of my patrol vehicle without incident." *Id*., Ex. B (Decl. of Ben Ramos III, May 12, 2019), p. 2, ECF No. 32-3. Ramos claimed he did not see Calderon use excessive force after he arrived to investigate the incident:

> Detective E. Calderon #1236 arrived to conduct his investigation. I did not observe any use of excessive force by E. Calderon toward Mr. Zuniga. I did not observe E. Calderon strangle or choke Mr. Zuniga. I did not need to intervene or

> render aid to Mr. Zuniga because I did not observe any excessive force being used against him during the incident.

*Id*.

The supplement to the official Sheriff's Office report on the incident that Calderon prepared on June 26, 2016, does not mention any use of force:

> I was . . . notified of the incident and . . . proceeded to the scene. . . . Upon arriving to location I made contact with Deputy Garza. . . . I proceeded to Deputy Garza's vehicle to make contact with Cesar [Zuniga] and obtain his statement. I asked Cesar [Zuniga] if he wished to provide me with a statement and he did not comply. I asked Cesar several times if he was willing to provide me with a statement and he remained silent, acting as if he did not hear anything I mentioned. Cesar was uncooperative and did not say one word. Deputy R. Chapa arrived at location and photographed Cesar's vehicle and Deputy Ramos' vehicle. Cesar was then brought out of the patrol vehicle and photographs were taken. Cesar was then transported to 401 S. Frio and booked for Evading Motor Vehicle and Child Endangerment.

*Id*., Ex. A-1, (Supplementary Report, June 26, 2016), p. 5, ECF No. 32-2. Calderon later asserted "I did not make physical contact with Mr. Zuniga during this incident [and] I did not see any excessive force being used by any officers at the scene, including by those photographing Mr. Zuniga." *Id*., Ex. A (Decl. of Edward Calderon, May 13, 2019), p. 3, ECF No. 32-1.

Due to the nature of Zuniga's claim, Detective Sylvia Perez from the Public Integrity Unit investigated the incident. *Id*., Ex. D (Decl. of Sylvia Perez, May 15, 2019), ECF No. 32-5. She reviewed photos of Zuniga taken on June 6, 2016, but she did not find bruises or marks on his neck consistent with chocking. *Id*. at 2. She also interviewed Zuniga and Calderon. *Id*. at 1. "Zuniga stated he identified Edward Calderon as the person who chocked him after reviewing the police report." *Id*. at 2. He claimed that "he was choked by a tall bald man." *Id*. But Perez noted "Calderon is not tall [and] Calderon is not bald." *Id*. Perez concluded there was "no basis for Cesar Zuniga's allegations." *Id.*

The Court ordered Zuniga to file and serve certain documents on defendants' counsel on or before January 18, 2019:

a. An executed original of the Medical Authorization form attached to this scheduling order.

b. A complete list of the names and addresses of: (1) all physicians, physician's assistants, nurses, chiropractors, or other medical care providers who have provided Plaintiff with any medical care during Plaintiffs period of incarceration or detention, including any medical care relevant to this lawsuit; and (2) all hospitals, clinics, infirmaries or other facilities where he received any medical care or treatment for any injuries relevant to this lawsuit.

Order, ECF No. 24.

According to defendants, Zuniga neither "provided a medical authorization, nor any contact information for a single medical care provider" to them. Defs.' Mot. Summ. J., p. 8, ECF No. 32. Defendants assert Zuniga has, therefore, failed "to provide a scintilla of evidence of an injury." *Id*.

When Zuniga did not timely respond to defendants' motion, the Court advised him:

Under Local Rule CV-7(e)(2), a response to a dispositive motion must be filed "not later than 14 days after the filing of the motion." The Rule further provides that, "[i]f there is no response filed within the time period prescribed by this rule, the court may grant the motion as unopposed."

Order, ECF No. 36. The Court ordered Zuniga to file a response by October 10, 2019. The Court warned Zuniga that his "[f]ailure to respond may result in dismissal of Plaintiff s case for the reasons set out in the motion for summary judgment, and alternatively for failure to prosecute his case. *See* FED. R. CIV. P. 41(b)." *Id*.

Zuniga responded to the Court's order and the defendants' motion with a letter on October 8, 2019. Pl.'s Advisory, ECF No. 41. In the letter, Zuniga states "I still do intend to

continue to persue [sic] prosecution." *Id*. Notably, he fails to address any of the assertions made by defendants in their motion and affidavits.

## II. APPLICABLE LAW

### A. Standard of Review for Judgment on the Pleadings Pursuant to Federal Rule of Civil Procedure 12(c)

Rule 12(c) permits any party to move for a judgment on the pleadings "[a]fter the pleadings are closed but within such time as not to delay the trial." Fed. R. Civ. P. 12(c). Rule 12(c) allows a court " to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir.1990) (per curiam) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367, at 509–10 (1990)). A court evaluates a Rule 12(c) motion under the same standard of review applied to Rule 12(b)(6) motions. *Ackerson v. Bean Dredging, LLC*, 589 F.3d 196, 209 (5th Cir. 2009); *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).

Rule 12(b)(6) allows a court to dismiss an action when the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "While a complaint . . . does not need detailed factual allegations, . . . [f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235–236 (3d ed. 2004)). When evaluating a Rule 12(b)(6) motion, a court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank*

*PLC*, 594 F.3d 383, 387 (5th Cir. 2010).  A court must accept as true all well-pleaded facts in the complaint and view those facts in the light most favorable to the plaintiff.  *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012).  But a court may disregard conclusory allegations, for they are "not entitled to the assumption of truth."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "  *Id*. at 678 (quoting *Twombly*, 550 U.S. 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).  "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' "  *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.' "  *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (quoting *In re So. Scrap Material Co*., 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).  This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

**B. Standard of Review for Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56**

Rule 56 permits a court to grant summary judgment if it finds there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

"A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). "A fact is material if it 'might affect the outcome of the suit.'" *Id*.

A party seeking summary judgment bears the initial burden of specifying the basis upon which he contends judgment should be granted, and of identifying the portion of the record which, in his opinion, demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). While the movant must demonstrate the absence of a genuine issue of material fact, he does not need to "'negate the elements of the nonmovant's case.'" *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 n.16 (5th Cir. 1994) ).

When the moving party has carried its burden, the nonmoving party bears the burden of coming forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "'[T]he nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings.'" *Jones v. Anderson*, 721 F. App'x 333, 335 (5th Cir. 2018) (quoting *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010)). The nonmovant "must not only 'identify specific evidence in the record,' but also 'articulate the "precise manner" in which that evidence' supports his position." *Infante v. Law Office of Joseph Onwuteaka, P.C.*, 735 F. App'x 839, 843 (5th Cir. 2018) (quoting *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014)). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *McCarty v.*

*Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 357 (5th Cir. 2017) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) ).

In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Wease v. Ocwen Loan Servicing*, LLC, 915 F.3d 987, 992 (5th Cir. 2019). Where the non-moving party fails to establish "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," no genuine issue of material fact can exist. *Celotex*, 477 U.S. at 322–23; *Whiting v. University of Southern Miss.*, 451 F.3d 339, 345 (5th Cir. 2006).

### III. ANALYSIS

#### A. Official Capacity

Zuniga gives no indication in his complaint of the capacity in which he sues the named defendants. He merely alleges all defendants were employees of the Bexar County Sheriff's Office and Calderon used excessive force after his arrest while Ramos and Garza watched. Pl.'s Compl. 3, 4, ECF No. 1.

"Official-capacity suits . . . 'generally represent only another way of pleading an action against' " a governmental entity. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n.55 (1978)). Eleventh Amendment sovereign immunity protects the State from suit and liability. *Cook v. Hopkins*, 19-10217, 2019 WL 5866683, at *9 n. 6 (5th Cir. Nov. 8, 2019) (citing *Wichita Falls State Hospital v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003)). The Eleventh Amendment "does not ordinarily apply to municipal corporations and other political subdivisions of the state." *Lewis v. Midwestern State Univ.*, 837 F.2d 197, 198 (5th Cir. 1988) (citing *Edelman v. Jordan*, 415

U.S. 651, 667 & n. 12 (1974). But municipal corporations or other political subdivisions of the state "cannot be held liable solely because it employs a tortfeasorsor [or] on a respondeat superior theory." *Monell*, 436 U.S. at 691. To prevail on a claim, a "plaintiff must show that the municipality [or political subdivision of the state] has a policy or custom that caused his injury." *Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007) (citing *Graham*, 473 U.S. at 165–66; *Monell*, 436 U.S. at 689). A policy includes any "statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority." *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984), *on reh'g*, 739 F.2d 993 (5th Cir. 1984). A custom includes any "persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Id*. "A plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." *Colle v. Brazos County, Texas*, 981 F.2d 237, 245 (5th Cir. 1993)). Rather, the plaintiff "must allege that the locality was directly responsible for the asserted constitutional violation, because the locality had a policy or custom that led its employees to commit the constitutional violation." *Murray v. Town of Mansura*, 76 F. App'x 547, 549 (5th Cir. 2003).

The Court finds Zuniga's complaint is devoid of an allegation that an official policy or custom caused his injury. Pl.'s Compl. 4, ECF No. 1. Zuniga only alleges three individual employees of the Bexar County Sheriff's Office violated his rights. As a result, the Court finds Zuniga's complaint does not contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face against defendants in their official capacities. The Court

accordingly concludes it should grant defendants' motion to dismiss and dismiss Zuniga's official-capacity claims against all three defendants pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(c).

**B. Excessive Use of Force**

Zuniga alleges Calderon violated his civil rights by using excessive force after his arrest on June 6, 2016. Pl.'s Compl. 4, ECF No. 1. Specifically, he complains Calderon "asked me to lift my head up to take a picture of me. I didn't comprehend well, and that is when he started to choke and strangulate [sic] me." *Id*.

Section 1983 does not grant substantive rights; it provides a vehicle for a plaintiff to vindicate rights protected by the United States Constitution and other federal laws. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). "To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Moreover, a plaintiff asserting a § 1983 cause of action against a government official must make specific factual allegations describing the defendant's role in the deprivation at issue. *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002).

"[T]he Fourth Amendment's prohibition against unreasonable seizures of the person" provides the "primary source[ ] of constitutional protection against physically abusive governmental conduct." *Graham v. Connor*, 490 U.S. 386, 394 (1989). Hence, "*all* claims that law enforcement officials have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth

Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Id*. at 394 (emphasis in original). The " 'reasonableness' inquiry" is an objective one: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*. at 397. Consequently, "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Id*. To prevail under this standard, a plaintiff must show (1) he suffered an injury; (2) which resulted "directly and only from the use of force that was clearly excessive to the need[;]" and (3) the force used was "objectively unreasonable." *Hathaway v. Bazany*, 507 F.3d 312, 320 (5th Cir. 2007) (quoting *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999)). Whether the force used was excessive or unreasonable is a fact-intensive inquiry that depends on the "totality of the circumstances." *Tennessee v. Garner*, 471 U.S. 1, 8–9 (2010).

The lack of physical or documentary evidence showing Zuniga suffered an injury negates the first element of his excessive-use-of-force claim against Calderon. Zuniga maintains he suffered "mental trauma/agony" as a result of Calderon's actions. Pl.'s Compl. 4, ECF No. 1. Psychological injuries may be "sufficient to satisfy the injury element of a § 1983 claim for excessive force under the Fourth Amendment." *Flores v. City of Palacios*, 381 F.3d 391, 401 (5th Cir. 2004). But Zuniga provides no documentation to support his claim of mental trauma. Moreover, Zuniga refuses to comply with the Court's scheduling order to serve an executed medical authorization form and a complete list of the names and addresses of all his medical providers on defendants. Order, ECF No. 24; Defs.' Mot. Summ. J. 8, ECF No. 32. As a

result, defendants argue "[t]he absolute lack of information provided by Plaintiff regarding any medical treatment underscores [his] wholesale failure to provide a scintilla of evidence of an injury." Defs.' Mot. Summ. J. 8, ECF No. 32. The Court agrees.

Defendants' summary judgment evidence negates the second and third elements of Zuniga's excessive-use-of-force claim. It supports a conclusion that Calderon did not cause *any* injury to Zuniga because he did not use *any* force against Zuniga.

Calderon maintains, under penalty of perjury, "I did not make physical contact with Mr. Zuniga during this incident [and] I did not see any excessive force being used by any officers at the scene, including by those photographing Mr. Zuniga." *Id.*, Ex. A (Decl. of Edward Calderon, May 13, 2019), p. 3, ECF No. 32-1. Garza claims "I did not observe Investigator Calderon choke or strangle Mr. Zuniga. I did not observe E. Calderon touch Mr. Zuniga at all. I did not see excessive force being used by any Bexar County Officer toward Mr. Zuniga." *Id.*, Ex. C (Decl. of Nathaniel Garza, May 14, 2019), p. 1, ECF No. 32-4. Ramos asserts "I did not observe E. Calderon strangle or choke Mr. Zuniga." *Id.*, Ex. B (Decl. of Ben Ramos III, May 12, 2019), p. 2, ECF No. 32-3. Finally, Perez reports she reviewed photographs of Zuniga taken immediately after the incident and found no evidence of bruises consistent with chocking. *Id.*, Ex. D (Decl. of Sylvia Perez, May 15, 2019), p. 2, ECF No. 32-5. Perez concludes there was "no basis for Cesar Zuniga's allegations." *Id*. Finally, Zuniga describes his attacker as a bald man, while Calderon was not bald at the time of the June 6, 2016 incident. *Id*.

When Zuniga failed to timely respond defendants' motion, the Court ordered him to file a response. Order, ECF No. 36. Zuniga responded with a letter asserting "I still do intend to continue to persue [sic] prosecution." Letter, ECF No. 41. Notably, he did not address any of

the assertions made by defendants in their motion or affidavits.

As the Court noted above, " 'the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings.' "  *Jones*, 721 F. App'x at 335 (quoting *Duffie*, 600 F.3d at 371).   The nonmoving party "cannot satisfy [his] burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence."  *Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004) (citations omitted).   The nonmoving party "must not only 'identify specific evidence in the record,' but also 'articulate the "precise manner" in which that evidence' supports his position."  *Infante*, 735 F. App'x at 843 (quoting *Willis*, 749 F.3d at 317).   Where the nonmoving party fails to establish "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," no genuine issue of material fact can exist.   *Celotex*, 477 U.S. at 322–23.

On the other hand, "[a] motion for summary judgment cannot be granted simply because there is no opposition, even if failure to oppose violated a local rule."  *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n. 3 (5th Cir. 1995) (citing *Hibernia Nat. Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985)).   The movant still has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the reviewing court may not grant the motion regardless of whether any response was filed.   *See Hetzel*, 50 F.3d at 362 n. 3.   Nevertheless, "by failing specifically to challenge the facts identified in the defendant's statement of undisputed facts, [a plaintiff] is deemed to have admitted the validity of the facts."  *Beard v. Banks*, 548 U.S. 521, 527 (2006).

After reviewing the totality of the circumstances, the Court finds, contrary to Zuniga's assertion, Calderon did not choke, strangle, or use *any* force against Zuniga.   Hence, Calderon's

actions were 'objectively reasonable' in light of the facts and circumstances confronting him, and Calderon did not violate Zuniga's Fourth Amendments rights after Zuniga's arrest on June 6, 2016. Therefore, Calderon has met his burden of establishing the absence of a genuine issue of material fact. Moreover, the Court finds Zuniga has not met his burden of coming forward with additional facts showing there is a genuine issue for trial. The Court accordingly concludes Zuniga is not entitled to relief and it should grant Calderon's motion for summary judgment under Rule 56.

### C. Fail to Intervene

Zuniga alleges Garza and Ramos violated his civil rights when they failed to intervene and stop Calderon from using excessive force. Pl.'s Compl. 4, ECF No. 1. Specifically, he complains they "just stood there watching him assault me." *Id*.

"[A]n officer may be liable under § 1983 under a theory of bystander liability where the officer '(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.'" *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (quoting *Randall v. Prince George's Cnty., Md*., 302 F.3d 188, 204 (4th Cir. 2002)). A reviewing court must "also consider whether an officer 'acquiesce[d] in' the alleged constitutional violation." *Id*. at 647 (quoting *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995).

Because the Court finds Calderon's actions at the time of Zuniga's arrest did not amount to an unconstitutional use of excessive force, it follows that Garza and Ramos did not violate Zuniga's civil rights when they failed to intervene and stop Calderon. As a result, the Court concludes it should grant summary judgment on Zuniga's failure-to-intervene claims against

Garza and Ramos.

### D. Qualified Immunity

Defendants Calderon, Garza, and Ramos asserted qualified immunity defenses in their answers and motion. Answer of Ramos and Garza, p. 2, ECF No. 13; Answer of Calderon, p. 2, ECF No. 23; Mot. Summ. J., p. 6, ECF No. 38. Zuniga made no effort to rebut these assertions. Pl.'s Advisory, ECF No. 41.

"[O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "A right may be clearly established 'without a case directly on point,' but 'existing precedent must have placed the statutory or constitutional question beyond debate.' " *Hanks v. Rogers*, 853 F.3d 738, 746–47 (5th Cir. 2017) (internal quotation marks omitted) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)).

Qualified immunity protects an officer even for reasonable mistakes in judgment. *See Ashcroft v. Al-Kidd*, 563 U.S. 731, 743 (2011) ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions."); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ("The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.' ") (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (dissenting opinion)).

"A qualified immunity defense alters the usual summary judgment burden of proof." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). By invoking qualified immunity, a

defendant shifts the burden to the plaintiff to rebut the defendant's assertion.  *Cantrell v. City of Murphy*, 666 F.3d 911, 918 (5th Cir. 2012).

Defendants' summary judgment evidence demonstrates Calderon made no physical contact at all with Zuniga.  *Id*., Ex. A (Decl. of Edward Calderon, May 13, 2019), p. 3, ECF No. 32-1; *Id*., Ex. B (Decl. of Ben Ramos III, May 12, 2019), p. 2, ECF No. 32-3; *Id*., Ex. C (Decl. of Nathaniel Garza, May 14, 2019), p. 2–3, ECF No. 32-4.  Moreover, Calderon does not meet Zuniga's physical description of his assailant.  *Id*., Ex. D (Decl. of Sylvia Perez, May 15, 2019), p. 2, ECF No. 32-5.  Indeed, at all times, Calderon's conduct with respect to Zuniga was objectively reasonable.  As such, there was no violation of Zuniga's clearly established rights.  Because Ramos and Garza did not observe any use of excessive force toward Zuniga, their actions with respect to Zuniga were also objectively reasonable.  Hence, they did not violate Zuniga's clearly established rights.

Zuniga has not provided a substantive response to defendants' assertion of an entitlement to qualified immunity.  Letter, ECF No. 41.  As a result, he has not met his burden of rebutting they are entitled to qualified immunity.

Consequently, the Court concludes defendants are entitled to qualified immunity.

### IV. CONCLUSION AND ORDERS

The Court concludes Zuniga has failed to allege a cause of action under § 1983 against any defendant in his official capacity.  The Court further concludes there are no genuine issues of material fact concerning any defendant in his individual capacity and all defendants are entitled to judgment as a matter of law.  Accordingly, the Court enters the following orders:

**IT IS ORDERED** that "Defendants' Motion for Summary Judgment and in the

alternative, Motion for Judgment on the Pleadings" (ECF No. 32) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff Cesar Rafael Zuniga's "Civil Rights Complaint" (ECF No. 1) is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that all pending motions are **DENIED**.

**IT IS FURTHER ORDERED** that the dismissal of Plaintiff Cesar Rafael Zuniga's "Civil Rights Complaint" (ECF No. 1) will count as a "**STRIKE**" pursuant to 28 U.S.C. § 1915(g).[2] The Clerk will therefore provide a copy of this order to the Operations Department for the Western District of Texas. The Court **ADVISES** Zuniga that should he accumulate three strikes, he may be required to pay the full filing fee when filing additional civil actions or appeals, unless he demonstrates that he is in imminent danger of serious physical injury.

**IT IS FINALLY ORDERED** that the District Clerk shall **CLOSE** this case.

**SO ORDERED.**

**SIGNED this 19th day of December, 2019.**

_____
JASON PULLIAM
UNITED STATES DISTRICT JUDGE

---

[2] *See* 28 U.S.C. § 1915(g) ("In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.").